PAULA MICHELE McCASKILL, Plaintiff v. PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Defendant

No. 9415SC447

(Filed 21 March 1995)

**Insurance § 528 (NCI4th)— nonfleet vehicle—policy covering private passenger vehicles—accident in 1990—intrapolicy stacking of UIM coverages allowed**

Because the policy at issue was a nonfleet policy covering only private passenger motor vehicles, even though it covered five vehicles owned by insured, and because the accident in question occurred in 1990, thus causing the disposition of this case to be governed by the pre-1991 version of N.C.G.S. § 20-279.21(b)(4), the trial court erred in finding that intrapolicy stacking of underinsured motorist coverages was not allowed and in granting summary judgment for defendant.

**Am Jur 2d, Automobile Insurance § 322.**

**Combining or "stacking" uninsured motorist coverages provided in separate policies issued by same insurer to same insured. 25 ALR4th 6, sec. 1.**

**Combining or "stacking" uninsured motorist coverages provided in fleet policy. 25 ALR4th 896.**

Appeal by plaintiff from order entered 4 March 1994 by Judge A. Leon Stanback, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 25 January 1995.

On 16 August 1990, Paula McCaskill was driving a 1974 Volkswagen owned by her father, William McCaskill, and insured by defendant, Pennsylvania National. Christopher Todd Carter turned left directly in front of plaintiff, causing an accident in which plaintiff

McCASKILL v. PENNSYLVANIA NATIONAL MUT. CAS. INS. CO.

[118 N.C. App. 320 (1995)]

suffered injuries. At the time of the accident, Paula was living with her parents and was listed as a named driver on the insurance policy.

Plaintiff filed an underlying tort suit against Carter and obtained a judgment against him in the amount of $85,000 on 8 May 1993. Prior to the underlying suit, Carter's insurance company tendered their policy limits of $50,000. Because plaintiff's damages exceeded Carter's limits, she attempted to pursue underinsured coverage through her father's personal automobile insurance policy. Mr. McCaskill's policy had stated underinsured motorist coverage of $50,000 per claimant and $100,000 per accident. At the time of the accident there were five motor vehicles covered on the McCaskill policy, including the 1974 Volkswagen.

On 19 February 1993, Paula McCaskill filed a declaratory judgment action against defendant, asking the court to find that stacking was allowed under the policy and, therefore, the limits under her father's policy were $250,000 per person and $500,000 per accident. Both parties thereafter filed motions for summary judgment. The trial court granted defendant's motion and denied plaintiff's motion. Plaintiff appeals.

*Duffus & Associates, P.A., by J. David Duffus, Jr. and R. Bailey Melvin, for plaintiff appellant.*

*Nichols, Caffrey, Hill & Evans, L.L.P., by Joseph R. Beatty, for defendant appellee.*

ARNOLD, Chief Judge.

Plaintiff contends that the trial court erred by entering summary judgment in favor of defendant and denying plaintiff's motion for summary judgment. Because the accident occurred in 1990, the disposition of this case is governed by the pre-1991 version of N.C. Gen. Stat. § 20-279.21(b)(4), which stated:

In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability policy and the total limits of the owner's underinsured motorist coverages provided in the owner's policies of insurance; it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply, the benefit of all limits of liability of underinsured motorist coverage under all such policies: *Provided that this paragraph shall apply*

*only to nonfleet private passenger motor vehicle insurance as
defined in G.S. 58-40-15(9) and (10)* [sic].

G.S. § 20-279.21(b)(4) (1989) (emphasis added). This provision has
been interpreted to require both interpolicy and intrapolicy stacking
of underinsured motorist coverages. *Sutton v. Aetna Casualty &
Surety Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437,
384 S.E.2d 546 (1989). An exception exists under the emphasized por-
tion above, however, for fleet policies vis-a-vis intrapolicy stacking.
*Id.* "The language of this statute makes it clear that intra-policy stack-
ing is only available when the coverage is nonfleet and the vehicle
covered is of the private passenger type." *Aetna Casualty and Surety
Co. v. Fields*, 105 N.C. App. 563, 567, 414 S.E.2d 69, 71, *disc. review
denied*, 331 N.C. 383, 417 S.E.2d 788 (1992). The issue for this Court,
therefore, is twofold: (1) whether the coverage at issue is nonfleet,
and (2) whether the vehicles covered are private passenger motor
vehicles.

Each of these questions is answered by reference to definitions
provided by G.S. § 58-131.35A, now codified as G.S. § 58-40-10, as well
as our courts' interpretations of those definitions. "Nonfleet" cover-
age is defined as "a motor vehicle not eligible for classification as a
fleet vehicle for the reason that the motor vehicle is one of four or
less motor vehicles owned or hired under a long-term contract by the
policy named insured." *See* G.S. § 58-40-10(2) (1989). Defendant
argues that on the face of the statute, the McCaskill policy qualifies as
a fleet policy because it covers five vehicles, and thus automatically
falls within the stacking exception for nonfleet coverage under G.S.
§ 20-279.21(b)(4). Our Supreme Court, however, defined a fleet policy
as "a single policy designed to provide coverage for a multiple and
changing number of motor vehicles used in an insured's business."
*Sutton*, 325 N.C. at 266, 382 S.E.2d at 763; *see also Watson v.
American National Fire Insurance Co.*, 106 N.C. App. 681, 417
S.E.2d 814 (1992), *aff'd*, 333 N.C. 338, 425 S.E.2d 696 (1993).

Although the McCaskill policy covers five vehicles, we think, as
evidenced by the Supreme Court's definition of "fleet", that the pur-
pose of excepting a fleet policy from intrapolicy stacking would not
be furthered by strictly applying the statutory definition of "nonfleet."
Intrapolicy stacking within a fleet policy, where many vehicles are
usually involved, gives the insured an amount of underinsured cover-
age conceivably far in excess of what the parties bargained for.
*Sutton*, 325 N.C. 259, 382 S.E.2d 759. In the instant case, it makes far

more sense to include the Court's definition of "fleet" in conjunction with the statutory definition of "nonfleet" where it is undisputed that the McCaskill vehicles were not used for the insured's business, and the unexpected dangers of intrapolicy stacking are not present. Therefore, plaintiff's policy is nonfleet.

The second prong of this issue is controlled by the applicable statute at the time of the accident which defined "private passenger motor vehicle" as

a. A motor vehicle of the private passenger or station wagon type that is owned or hired under a long-term contract by the policy named insured and that is neither used as a public or livery conveyance for passengers nor rented to others without a driver; or

b. A motor vehicle that is a pickup truck or van that is owned by an individual or by husband and wife or individuals who are residents of the same household if it:

1. Has a gross vehicle weight as specified by the manufacturer of less than 10,000 pounds; and

2. Is not used for the delivery or transportation of goods or materials unless such use is (i) incidental to the insured's business of installing, maintaining, or repairing furnishings or equipment, or (ii) for farming or ranching.

Such vehicles owned by a family farm copartnership or a family farm corporation shall be considered owned by an individual for the purposes of this section; or

c. A motorcycle, motorized scooter or other similar motorized vehicle not used for commercial purposes.

G.S. § 58-40-10(1) (1989). From these definitions, and the undisputed deposed statements of the named insured and his wife, the five vehicles listed in the policy were private passenger motor vehicles.

Defendant contends that the policy expressly prohibits intrapolicy stacking and that the policy provisions should be enforced as written. The limit of liability clause in the McCaskill policy states in pertinent part, "This is the most we will pay for bodily injury and property damage regardless of the number of . . . vehicles or premiums shown in the Declarations." Similar policy language has appeared in previous opinions in which the Supreme Court and this Court have consistently held that the relevant statute prevails over the limit of liability clause. *Wiggins v. Nationwide Mutual Ins. Co.*,

112 N.C. App. 26, 434 S.E.2d 642 (1993). Furthermore, the insured's payment of separate premiums for each vehicle within underinsured coverage should be, and is, relevant to our consideration. *See Sutton*, 325 N.C. 259, 382 S.E.2d 759.

Because the policy at issue is a nonfleet policy covering only private passenger motor vehicles, the trial court erred by entering summary judgment for defendant and denying plaintiff's motion for summary judgment. Summary judgment should have been entered for plaintiff. The decision of the trial court is therefore reversed.

Reversed and remanded.

Judges JOHNSON and MARTIN, MARK D., concur.